Mr. Chief Justice Carecer
delivered the opinion of the Court:
This case presents to us an exception to the action of the court below in instructing the jury to return a verdict for the defendant upon the facts as stated in the opening address of plaintiff’s counsel to the jury.
*10 Ordinarily an opening statement of a case to a court and jury is not of record, and does not in any wise enter into the judicial history of the case. It is an invitation on the part of counsel to the jury to give their attention to what it is proposed to prove in the case, and it is needless to say that it is made as favorable to his client and as persuasive to the jury as counsel can make it.
We think it is the first time that this court has been called upon to review a record of this kind- — a record made up of nothing more than the opening statement of counsel to the court and jury.
A similar record, however, was before the Supreme Court of the United States in the case of Oscanyan vs. Arms Co., 113 U. S., 261, and the ruling there was that where the undisputed statement of a case by counsel is so definite and complete as to constitute the equivalent of an agreed state of facts, the court will take possession of it and direct a verdict accordingly, even though no proof has been presented.
In that case a secretary of the Turkish Legation agreed with a firearms manufacturing company in Connecticut to procure a contract from his government for arms. How he was to procure the contract was not expressed in the declaration, and therefore it was not open to demurrer, as otherwise it might have been. The opening statement made by counsel to the jury, however, explained that by reason of the plaintiff’s relation to the Turkish Legation, and the influence which that relation enabled him to exercise upon the minister, he would be enabled to carry out his agreement; and he was to use that influence for that purpose, making it plainly a contract against public policy, and void for that reason. Consequently he could not recover, even if he had proved his contract.
When that feature of the case was brought to hear upon the written contract to enlighten it and constitute part of it, the judge trying the case inquired of counsel if he relied upon that state of facts, and he was told that he did. The court then had before it a contract, the terms of which were that this subordinate of the Turkish Legation should under *11 take to exercise his influence upon the Legation for the purpose of procuring the purchase of these arms, and all that remained of the case was to determine whether such a contract was void or valid. The court pronounced it void and instructed the jury to return a verdict for the defendant.
The case then went to the Supreme Court of the United States, where the ruling of the court below was affirmed. The court, however, takes pains to say that there must be no doubt as to its having before it all the facts of the case in the opening statement. The case must be concluded and finished with no reservation of facts. It must not be a case to be completed by testimony. Then, and only in such a case, the power resides in the court to direct a verdict, when the opening statement of counsel shows no case upon which a recovery could be had.
That is substantially the decision by which it is sought to sustain the practice in the case now at bar. Let us see, therefore, what sort of a case we have here. The statement of counsel to the jury is very brief, and I will read it:
“May it please the court and gentlemen of the jury: The plaintiff in this suit, gentlemen of the jury, was in 1881, in December of that year, engaged as an engineer in the location of a railroad at some point near Gaithersburg, and on the day of the 9th he came down from Gaithersburg to Washington; spent that afternoon here, and that evening. The next morning, the 10th, he left his hotel about half-past seven o’clock, and proceeded to the Baltimore & Ohio depot, and there purchased a ticket to Gaithersburg, intending to take the 8:40 train.
“After purchasing the ticket, he passed through the gate, which was open for admission to passengers to that train, and was directed to a train by an official of the Baltimore & Ohio Eailroad. He boarded the train that he was directed to get on, and subsequently he was informed, by some one wearing the uniform of the Baltimore & Ohio railroad officials, that he was on the wrong train; that that car had been shifted, detached from the train; that. he should get out of that car and get on another train stand *12 Ing on the right-hand side of the platform. He got on that train, and very soon after getting on the train it pulled out of the station.
“ Just outside of the station, about 600 feet, more or less, between the shed and a small roundhouse which is used as a telegraph station, an officer of the Baltimore & Ohio Railroad Company, wearing the uniform of the company, came up, and the plaintiff asked him if the train he was on was going to Gaithersburg. This official, or person wearing the uniform of the company, replied, ‘No, it is going to Baltimore, and if you don't want to go to Baltimore, you had better get off.’ And thereupon the plaintiff did proceed to get off the train in obedience to such instructions; and in so doing was thrown and fell upon his right arm, which was so injured and crushed that the same had to be amputated.
“It will further appear in the evidence, gentlemen of the jury, when the direction was given by this official of the Baltimore & Ohio Railroad Company to Jones to get off the train — the testimony will show that at that time the train was running at a rate of between three and four miles an hour — about as fast as a man could walk.
“After the injury Jones was taken up by some of the officials of the Baltimore & Ohio Railroad Company, taken to the telegraph station, which was very near, and was from there removed in an express wagon to Providence Hospital, where he remained until his friends could make provision for him.
“ He was confined in the hospital until the 24th or 25th of February. His arm had to be amputated. It was taken out at the shoulder by Dr. Eliot.
“ It is unnecessary now, gentlemen, to go into any details of the case. It is only necessary for you to have the outlines of the case, and let the details appear as they may be developed in the testimony.
“It is proper for me to say that this is the second time that this case has been submitted to a jury for trial.”
And he goes on with an attempt to repeat the history of *13 a former trial, which was very properly arrested by the court and abandoned.
The Court: “It is hardly proper, Mr. Kent, to refer to anything occurring in the former trial of this case, and especially to any verdict that may have been given.”
Mr. Kent: “Very well. I shall lay the case before you as if there had been no former trial, upon the statement I have made to you. We think that the testimony will bear us out satisfactorily, and will substantiate the statement I have made, as I have made it to you.”
Whereupon a motion was made that the court direct the jury to render a verdict for the defendant, which motion the court granted, and a verdict was so rendered.
In reviewing that ruling we are called upon to examine this opening statement of counsel, a statement professedly brief and but an outline of what was intended to be after-wards developed by the proof.
“ I have given you the outline of this case, gentlemen of the jury. You will find its details in the testimony.”
He says further, at an after period, that he thinks he will be able to substantiate his case as he had stated it by the evidence. Was that statement such a presentation of an agreed state of facts that upon it the court could render judgment? We think not. The statement of facts should be certain, and present a clear and conclusive judicial case. The court in the case we have cited had before it an issue of law, pertinently addressed to the court, viz., whether the contract in suit was a valid contract or not — a subject that was especially addressed to the arbitrament of the bench.
Here we have an action on the case dependent upon a series of facts in parol. Testimony is to enlighten it from the beginning to the end. The court below, however, treated it as though it had a finished case before it instead of a brief preliminary statement by counsel assembling some of the circumstances of his case — not the whole case, but a portion of it, deferring the restj'of it to the development of the testimony.j [It was not a case complete in itself *14 for the purposes of legal judgment, as was presented in Oscanyan vs. Arms Company.
We think that within the limitations of the case, as stated by counsel, a case might be made. We do not say that it was completely made in his opening statement fully, for that, as he says, was merely the warp of his case ; the filling was to be supplied by proof.
“You have the outline of this case, the details will appear in the testimony.”
We think, therefore, that until there had been a complete manifestation of the case by the proof it was an erroneous exercise of the power of the court to pass judgment upon it.
Finding this error we are compelled to reverse the judgment and award a new trial.